Good morning, your honors. I'm Monty Jewell from Missoula, Montana. It's my first appearance here in Seattle, or before the Ninth Circuit, at least live. I'm representing James von Norbury. Mr. Norbury is from Butte, Montana, which is a pretty unique place where I practiced for a couple of years. He lived there his whole life. He's just a year older than me, and his whole family is there, and his kids are there. In listening to the previous argument, which involves the similar issue that we're about to discuss, I was trying to imagine talking to any of my former colleagues in Butte, let alone von, as he goes by, or God forbid his mom, and try to explain how his conviction in 89, which they thought was erased from the face of the earth, was actually not erased and can now be the basis of a new conviction and a new penalty that can put him away for 20 years instead of 10 years, take him away from his family and his kids and so forth. But with respect to Butte law, it is clear that Montana intended to erase and give a second chance to folks who have these prior convictions. Just so I can understand the sequencing here, though, he committed the offense of conviction here before he had the prior conviction dismissed, is that correct? That's correct, Judge. Okay, so he was still going, he was on his probationary period, went out and re-offended. That's not correct, Judge. This conviction that was the predicate conviction for enhancing his sentence under 841 happened in 1989, a 17-year-old conviction. He has a criminal history point of one. So this is a very, very old conviction, and what had happened, which is actually not at all uncommon and maybe even the custom and practice in Butte was that they just never had gotten rid of it. So where's the proof that he was not guilty of the original offense anyway? Thank you for asking that, Judge. In the order to dismiss Went to a jury, and the jury found not guilty? Well, no, he was presumed innocent. Well, but he plead guilty, didn't he? Well, he did plead guilty. That's correct. Okay. So he agrees that the offense was actually in existence? No. It never existed. He was never guilty when he said, I'm guilty, Your Honor. He was lying to the court. What Vaughn would likely say if he were here is that no one's listening to me along the way. I don't know why they're going to listen to me now. He would look at the order that the judge in Butte, I'm sorry. I want to know what he did when he appeared before the state court on the first charge. I believe, and based on his account, Judge, that he was told that this would represent a second chance to him, that it would go away altogether. And I plead guilty. If you plead guilty, we'll get you some treatment. We'll get you back to your family. If you plead guilty, he did, Judge. He did. But then later, Judge Krueger struck the adjudication of guilt, which is the language of the order. And in time, I'm sorry, from the record, erased it altogether. And in point of time, that happened after the federal jury had returned its Supreme Court met what it said in Dickerson, that the conviction is final for purposes of federal law when the jury returns its verdict. At that point in time, he had not yet expunged his Montana conviction. Had he not? I understand that as a different question that the court's being asked to consider, but that would be correct. I'm just trying to get the sequence of it, because what happened was his lawyer at trial at the truck in this case. Yeah. OK. So what you did was realizing the significance of that prior conviction. You did what a good lawyer would do. You went down to the Montana state court and said, Judge, you got to get this thing off my client's record before he gets sentenced. That's true, Judge. I called Joe Jr. and Anna Condon said, how did I get rid of this when someone forgets it? And he says, this is how they do it. So that's how we did it. And but that order does say that the counts are dismissed with prejudice. The adjudication of guilt is dismissed. It has gone away entirely. So with respect to finality, that's the only point I wanted to get across. It's if we're talking about what's the final conviction, the final state of the situation was that the adjudication of guilt is gone, which would leave. Well, it's kind of a no pro tonk argument, though, isn't it? Let me see if I can rephrase my question. If we look at the analysis at the moment that the jury came into the courtroom and said we find Mr. Norbury guilty, if if his federal in federal court, if his federal conviction is final at that time, at that moment, he does. I don't I don't think the analysis should end there. No, no, I understand. Because what you're saying is. But when we got in front of Judge Lovell on the date set for sentencing in the interim, I had obtained this order from the Montana State Court and it was no longer, as far as Montana was concerned, an existing prior conviction because I got this order that says it's gone. That's correct. It's like finding a lottery ticket on his floor, a winning lottery ticket. It was there. He was entitled to it. He just hadn't gone and got it, which is whether he waited too late to present it, to cash it. That's that's really what I'm wrestling with. And I'm and I'm hearing the question. I just I keep coming back to the idea that in Butte and in else and elsewhere, they need to be able to have a safe harbor from federal law. If there's if Montana is not able to provide some sort of a second chance or some shelter from the enhanced penalties of the federal statutes, then it's not possible anywhere in the country. I mean, this language and this order was as strong as I could. Is that what the Supreme Court was saying in Dickerson, that with all due respect to Montana, we can't have a different rule in Montana than we do in Washington. But Judge Dickerson was about licensing for firearms. And this is a fellow going to jail for an additional 10 years. And with respect to Brebner, that's a child sex offense where recidivism is a is a difficulty. So I would grant that. You don't think recidivism is a problem? Well, it's a problem. But I think that with treatment in drug cases, the the outcomes can be different. And it's not I mean, it gets to be less clear than the judges are saying they want the law to be on this point. But Dickerson has been overruled by Congress. And we haven't had a clear analysis of the question. Dickerson hasn't been eradicated. Supreme Court's decided it. And it's still good law. There has been a modification of the result in Dickerson by subsequent legislation. That's what's happened. And I should correct myself. And I think that the modification and combined with this court's decision in Brebner has refocused the analysis on the actual language. And I can't imagine standing before Judge Malloy in our district and trying to say, explain why an adjudication of guilt that has been dismissed and counts that have been dismissed are not final. And it's certainly not what the folks involved in the transaction were thinking of at the time when they negotiated it. Do you think Montana is different in the sense that it goes beyond an expungement, arguably, and dismisses the entire matter with prejudice? I do, Judge. Does that make a difference? And if so, why? Well, if the adjudication of guilt is gone, then we're left with the presumption of innocence. I have a number of thoughts. I guess I won't belabor the arguments I made in the last case, but I have a few additional thoughts based on Mr. Jewell's argument. Can I just ask you, while you're doing that, had the lottery ticket been cashed on time, that is, before the conviction in this case, would that have made a difference as far as your analysis is concerned? It would not have, Your Honor, because of the very questions Judge Beezer is asking. Mr. Jewell says that, offers that Montana should provide a safe harbor from the federal government, or that, and the Montana Supreme Court wipes this off the face of the earth. And both of those phrases strike me, because as powerful as the Montana Supreme Court is in Montana, they of course can't provide a safe harbor from federal law, as no state can. I think he's saying that. I think what he's suggesting is that if state law provides this mechanism to eliminate the fact of conviction by dismissing it entirely, then there's a Montana purpose in doing so, and the Supreme Court is simply effectuating that, but that is the Montana Supreme Court. So what happens is that under federal law, under your argument, taking it out of, taking Dickerson, that once the conviction is entered, regardless of whatever conditional sentence is imposed, he has a prior conviction, and it doesn't make a whit of difference whether or not he lives up to and earns a second chance under state law. I would amend that just a little bit by saying once the appeal time has run, yes, the conviction is entered. The appeal time presumably is shorter than the time he would have to fulfill in order to earn his right to cash the lottery ticket. That's exactly right. So it's sort of a, so with that sort of meaningless, I'm not being pejorativist to you, but rather meaningless right to appeal, he takes the offer, he pleads to get the second chance, which he might not get if he didn't plead, and through trial in state court, he might not get that opportunity. So he has an inducement to plead out and doesn't do him any good as far as federal. So his remedy is not to reoffend. His remedy is not to reoffend, and I would respectfully disagree in terms of what happens in Montana state court, because I think the key point there is the fact is he really did commit the crime. And his remedy there, if he really didn't commit the crime, is to challenge the accusation against him and not plead guilty. Yeah, no, I understand. The remedy is, if he did. But nonetheless, the point is that there's an incentive, obviously, to plead, even if you may think you have, you could go to trial and you might win. Right. And so you save the government, you save the state in that case. Well, I'm not telling you, you know better than I what the motivations and incentives are in pleading out. And you can get that wiped off your record later and lots of defendants take that off. Montana, in its wisdom, which one respects, is that that's a good deal for everybody, but the federal government says if you do that, you have a prior. Right, right. And in terms of second chances, I'd say you do get a second chance. What you don't get is another try at first chances, because if it really is wiped off the face of the earth, then you should have another first shot at it. But the fact is it's not wiped off the face of the earth. Well, it is for Montana purposes. For Montana purposes it is, that's right. But I think the federal statute and the Dickerson case are essentially saying we're not going to ignore the fact that it is not wiped off the face of the earth. And my final thought on the whole thing is that under Mr. Jewell's theory or Mr. Rhodes' theory, that there's no finality. There's no finality at all. If that lottery ticket's always sitting there on the floor. Well, it isn't always sitting there. It's there as long as the term of probation is being worked out. Well, I think Mr. Jewell's arguing that it was there even long after the term of probation, and he's got that order from the state court to show it. Well, that's why I asked the question I did when I started. Let's suppose that before you got involved through the federal crime, he may have been late. He could have done it a lot earlier under Montana, once he had finished his probation, but he did it before he reoffended in any event. Right. Right, and my argument is that it would still count because it still really happened. Was it originally a three-year deferral period as it was with regard to Mr. Gonzalez in the prior case? I don't recall what the term was. Three years is the maximum under the Montana statute unless you're paying back restitution. It can go to six. But the problem here is that it puts an affirmative burden on the part of the defendant to come back into court after he successfully completes the period of deferral to move for relief. Right. Whereas I think there are some states that actually provide for an automatic expungement at the end of the period if there's no showing, which would presumably be a petition by the prosecutor that he violated the terms of the deferral in the interim. Right. I think that's right. Some states do do that. Montana does not. There was also an issue with respect to sufficiency of the evidence. Unless the panel has questions, I will just leave that one on the briefs. Okay. Thank you. All right. Thank you very much. Thank you. Briefly, the reply brief submitted for Mr. Norbury has our breakdown primarily of the other circuit decisions. In Cisneros and in Meraz in particular, the analysis was expressly based on looking to state law. And in those cases, it was bolstering as, you know, it's a federal question, but it's bolstering the conclusion that, look, we don't need to worry because in New Mexico, even in New Mexico, the habitual offender statute is going to still bite you if you take advantage of these expungement procedures. And so Montana being different, at least with respect to the reasoning in those cases, would be significant. And in Ortega, the one of the minority had focused on the severity of the penalties that result from these 841 enhancements. And it made a statement that the contention that the conviction in that case warranted a life, the mandatory life enhancement bordered on frivolous. I think that's part of why it hasn't come up as much before this Court and why the Court hasn't had an opportunity to analyze it fully. Cisneros doesn't help you, though, does it? No. Because I read the Fifth Circuit. They agree with those circuits who have concluded that it's the historical fact that is the problem. That's correct, Judge. It's not the conclusion that's helpful. It's that the analysis itself, they're not shying away from looking at what the underlying state is doing or wants to accomplish. So if there's a, you know, if it's relevant to look at the state law in those circuits, it would be appropriate for the Ninth Circuit to also at least consider what Montana wants to accomplish, not only by its expungement statutes but by the order in this case, which was drafted in the strongest possible language and read Dickerson more narrowly. All right. Thank you. Thank you very much, Counsel. We appreciate your argument. And the case argued is submitted. Okay. I'm going to jump to United States v. Sill, which is the last case on calendar, and that is submitted. So we'll then proceed. Do you guys want to break? I'm fine. Okay. We'll proceed then to Jarvis v. K2.
judges: Beezer, Fisher, Tallman